## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JOSEPH DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Case No.   13-cv-4-MJR-SCW |
| | ) | |
| **AARON SWALLERS and RANDY DAVIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

This case is before the Court on Defendant Randy Davis' Motion for Summary Judgment on the Issue of Exhaustion (Docs. 27 & 28).   The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).   It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** the motion for summary judgment (Docs. 27 & 28).

### II.   Findings of Fact

On January 3, 2013, Plaintiff filed his Complaint (Doc. 1) alleging that Defendants subjected him to unconstitutional conditions of confinement.   Specifically, Plaintiff alleges that on August 8, 2011, while in the prison law library Pinckneyville Correctional Center, he requested permission from Defendant Aaron Swaller to use the restroom (Doc. 8 at p. 1).   Plaintiff informed Swallers that he had a serious medical condition and that if he did not use the restroom, he would go on himself (*Id.*).   Swallers allegedly told Plaintiff to go on himself.   Plaintiff had a bowel movement in

his clothes and then remained in the law library until his time was up (*Id.*). While he waited, his clothes were soiled in stool and blood (*Id.*). Plaintiff alleges that Defendant Randy Davis, as the warden at Pinckneyville Correctional Center, had a policy of forbidding inmates to use the restroom while in the law library (*Id.* at p. 2).

Plaintiff filed a grievance regarding the incident on August 8, 2011 (Doc. 28 Ex. A-1). Plaintiff's grievance alleged that he told Officer "Scwalay" (later determined to be Swallers) that he had an emergency and needed to use the bathroom immediately (*Id.*). Plaintiff also informed Swallers that he had a severe stomach and bowel condition, but that Swallers refused to let him use the restroom, and as a result, Plaintiff was left with no option but to relieve himself in his clothes (*Id.*). Plaintiff's counselor responded to his grievance on August 16, 2011, indicating that there are not bathroom facilities housed in the academic building where the law library is located (*Id.*). The grievance officer also reviewed Plaintiff's grievance and indicated that "[p]er Administration if an inmate requests access to the restroom while in the library/law library, he will be allowed to return to his housing unit to use the restroom" (*Id.*). The grievance officer also indicated that Defendant Swallers did not recall Plaintiff urinating on himself and that if an inmate needs to use the restroom, they are escorted back to the housing unit (*Id.*). Plaintiff's grievance was denied by the grievance officer on August 30, 2011 and the chief administrative officer concurred with the findings on September 15, 2011 (*Id.*). Plaintiff appealed the grievance to the ARB who denied the grievance because Defendant Swallers denied the allegation and because inmates who ask to use the restroom while in the Academic Building, which has no restroom, are allowed to return to the housing unit (Doc. 28 Ex. A-2). The ARB issued its ruling on December 12, 2011 (*Id.*).

On May 22, 2013, Defendant Randy Davis filed the pending Motion for Summary Judgment (Docs. 27 & 28) arguing that Plaintiff failed to exhaust his administrative remedies as to

Defendant Davis.   While Davis does not deny that Plaintiff's August 8, 2011 grievance was fully exhausted, Defendant Davis argues that Plaintiff did not exhaust his administrative remedies as to him with that grievance because the grievance does not mention Defendant Davis or contest the policy of forbidding inmates to use the restroom in the law library.   Defendant indicates that the ARB does not have any grievances from Plaintiff that grieve the policy of forbidding inmates to use the restroom in the law library.   Plaintiff has filed a Response to the grievance (Docs. 36 & 37) in which he argues that he fully exhausted his administrative remedies against Davis because he grieved all he knew about the incident and he did not know that there was a bathroom policy at the time he filed his grievance.

As the undersigned has determined that there are no disputes of fact as to exhaustion, the Court finds that a *Pavey* hearing is not necessary as the issues presented are solely legal questions.

### III.   Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law."   *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).**

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA").   **42 U.S.C. §1997e(a).**   That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).**   The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement.   *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").**   Exhaustion must occur before the suit is filed.   *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).**   Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending.   *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742. Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." *Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).

A.      **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Davis was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims.   **20 Ill. Administrative Code §504.800** *et seq.*   The grievance procedures first require inmates to speak with the counselor about their complaint.   **20 Ill. Admin. Code §504.810(a).**   Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.   *Id.*   The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.   The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).**   "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances."   **20 Ill. Admin. Code §504.830(d).**   If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB").   The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.   Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached."   **20 Ill. Admin. Code §504.850(a).**   "The Administrative Review Board shall

submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.  The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance.   In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).**  If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance.   **20 Ill. Admin. Code §504.840(b).**   Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

**B.    Analysis**

Here, the Court finds that Plaintiff has exhausted his administrative remedies as to Defendant Davis.  While the grievance procedure for inmates housed in the Illinois Department of Corrections requires inmates to identify the individuals they are grieving against, inmates are not required to necessarily name the individual involved, but rather are required to "include as much descriptive information about the individual as possible" if the names of individuals are not known. **20 Ill.Admin. Code 504.810(b).**  The Seventh Circuit has further held that an inmate is required to provide enough information to serve its function of giving "prison officials a fair opportunity to

address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).   When prison officials have been afforded an opportunity to address an inmate's claims internally, prior to federal litigation, the purpose of exhaustion has been met and the prisoner has properly exhausted his available remedies. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).   Thus, the Seventh Circuit has indicated that when a grievance is resolved on its merits and is not returned for failure to follow procedural rules, like specifically naming an official being grieved about, the issues in that grievance have been properly exhausted. *Riccardo v. Rausch*, 35 F.3d 521, 524 (7th Cir. 2004) **(When a grievance is "resolved on the merits" despite an inmate's failure to strictly adhere to the rules, "the federal jurisdiction will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action.").**

Here, while Plaintiff failed to name Defendant Davis or the policy he allegedly implemented, that does not amount to a failure to exhaust.   By writing his August 8, 2011 grievance about Defendant Swallers denying him access to the bathrooms, Plaintiff provided prison officials with enough information to put them on notice that he was also possibly grieving the policy that allegedly prevented him from using the restroom in the law library.   In fact, the grievance officer noted in the grievance officer's report that the "Administration" indicated that if an inmate requests access to the restroom while in the law library, they are allowed to return to the housing unit in order to use the restroom.   Thus, there is evidence that prison officials, in reading Plaintiff's grievance, knew of the policy regarding bathroom use in the law library and could address that policy through Plaintiff's grievance.   Further, there is no evidence that Plaintiff knew of the policy's existence in order to grieve the policy on August 8, 2011.   Plaintiff indicated in his response that he did not know that there was a policy regarding bathroom use in the academic building until he received his grievance back.   Thus, in filing his grievance against Swallers and the incident of not being able to use the

restroom while in the law library, he provided all of the information he had to the prison officials. This information was enough, however, to address Plaintiff's concerns as the grievance officer's report cites to the prison's policy on bathroom usage in answering the grievance.   The undersigned finds that Plaintiff's grievance provided prison officials with an opportunity to address any policy concerns raised by the incident involving Plaintiff, and thus Plaintiff exhausted all of his administrative remedies as to that issue.  Accordingly, the Court **RECOMMENDS** that the Court **DENY** Defendant's motion for summary judgment.

### IV.   Conclusion and Recommendation

In conclusion, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has properly exhausted his administrative remedies as to the bathroom policy implemented by Warden Davis.   Thus, it is **RECOMMENDED** that the Court **DENY** Defendant Davis' motion for summary judgment (Docs. 27 & 28).   Should this Report be adopted, all claims will still remain.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation.   The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.   *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).**   Accordingly, Objections to this Report and Recommendation must be filed on or before **October 15, 2013**.

**IT IS SO ORDERED**.
DATED: September 27, 2013.

*/ s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge